REAGAN v. BISHOP.

1. An action to set aside a sheriff's deed for fraudulent conduct at the sale, and to recover the land, is a case in chancery.
2. Purchasers at sheriff's sale, who were claiming an equitable interest in the property sold, did not avoid the sale by giving, in good faith, notice of such claim.
3. Three persons owning an equal interest in property about to be sold under execution, may lawfully combine to purchase the property jointly, there being no intention to prevent free competition.
4. Finding of fact by referee and Circuit Judge confirmed.
5. Petition for rehearing refused.

Before HUDSON, J., Spartanburg, February, 1886.

The opinion states the case. The Circuit decree was as follows:

The plaintiffs were bound to prove the alleged corrupt combination of the sale and chilling of the bidding by a clear preponderance of evidence. Fraud when alleged must be proven satisfactorily. The evidence, in my judgment, does not justify the referee in finding that there was a contract with Grambling not to bid at the sale—in fact the great weight is against this conclusion; it is not even sufficiently strong to satisfy me that these defendants or any authorized agent ever agreed to let him have twenty-five or thirty acres of land in case they became the purchasers. But even if this were true, it would not vitiate the sale if there was no agreement by the defendants with Grambling not to bid, and if the purpose of the agreement was not to chill the bidding. I really think the plaintiffs have failed on this essential allegation of this complaint.

As to the announcement of Mr. Cleveland, attorney for defendants, at the sale, it was made in the best of faith, and he was in duty bound to make it, as otherwise his clients might have been

seriously prejudiced in the suit then pending between these plaintiffs and defendants about this same land.

Now, after this sale and purchase the present defendants under arbitration secured the renunciation of Mrs. Reagan's dower in her husband's estate in this land. This gave, as defendants claim, a perfect title to them in the whole land. And after this the appeal pending in the Common Pleas, involving the question of title to this land between these same litigants was marked on the calendar *settled.* A serious question might be raised whether that might not have been pleaded in bar to the present controversy. No such question is raised, and I do not say the plea would have been good.

It is ordered, adjudged, and decreed, that the plaintiffs' exceptions to the referee's finding of fact that an illegal agreement was made with Grambling by the defendants be reversed, and that his judgment be sustained, as well on the ground on which it is based as upon the grounds upon which it should further have been based. It is further ordered that the complaint be dismissed with costs.

From this decree plaintiffs appealed.

*Mr. J. S. R. Thomson,* for appellants.

*Messrs. Bomar & Simpson* and *G. W. Nichols,* contra.

November 22, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to set aside a sheriff's deed of a tract of land containing 250 acres, and for the recovery of the same. It was referred to Charles P. Wofford, Esq., as special referee, to hear and determine the issues, when the following facts appeared :

In 1860 the land in dispute was sold by the commissioner in equity. At that time Mark Reagan and his three sisters, Martha, Ailsy, and Harriet, were living on the land, which, as we suppose, had been the property of their father, and it was bid off by the brother, Mark Reagan, for $960, payable in two equal annual instalments. The bond for the purchase money was signed by

Mark and the three sisters, who were all older than he was.    It seems from the credits on the bond, that most of the payments were made by the sisters in Confederate bills, and by receipting for their shares of the purchase money, who had means of their own derived from the sale of homespun cloth and teaching school; but they were entered as made "for Mark Reagan," and the deed was made to him individually.  The brother and sisters continued to live together on the place as one family, until one after another the parties all married except Harriet.   Martha married E. L. Pope, and Ailsy one Bishop.   Mark also married in 1863 or '4, and died intestate in 1877, leaving a widow, Lavinia, and three infant children, James, Hattie, and Emma, the plaintiffs.   The widow administered upon the estate of her deceased husband, and a judgment was recovered against her as administratrix, upon a debt of her intestate.

After the death of their brother Mark, the three sisters commenced suit in the Probate Court for partition of the land, claiming that they and their brother had paid equally for it, and each was entitled to one-fourth interest, although for convenience the deed had been made to the brother Mark alone.   The probate judge ruled against the sisters, but they appealed to the Court of Common Pleas; and, pending that appeal, the judgment which had been recovered against Lavinia as administratrix, was levied upon the whole land, which was sold as the property of Mark Reagan, deceased.   At the sale Mr. Cleveland (attorney for the sisters in the probate suit) announced that only one-fourth interest would go to the purchaser, and any one buying and attempting to hold the whole of it, would buy a law suit.   Mrs. Bishop bid off the land for $185, and the sheriff's deed was made to the three sisters.   They obtained from Lavinia, the widow, the relinquishment of her dower for $150, and she, with her children, left the place, and the probate appeal was marked "settled."

Afterwards Lavinia, the mother, died, and the children of Mark Reagan brought this action for the land, alleging that the whole legal title was in their father, Mark, and descended to them; and charging that the sheriff's sale should be set aside as void, upon the ground that the sisters fraudulently and illegally combined to chill the biddings, both by causing notice to be

given of their claims in the pending probate proceedings and by
making an alleged agreement with one Grambling to sell him a
small part of the land—some thirty acres—as an inducement for
him not to bid at the sale, which enabled them to get the land at
a sacrifice.  The defendants positively denied the alleged agree-
ment with Grambling.

After much testimony, the referee found that there was "an
understanding among the sisters that one should buy for herself
and the others, and that Grambling should have the benefit of
the purchase to the extent of twenty-five or thirty acres; but
that it was not shown that the low price of the land could be
attributed to that arrangement; that under the circumstances the
land brought as much as a prudent man would be willing to pay,"
&c.  To this report the plaintiffs filed exceptions, and the defen-
dants also gave notice that if the report of the referee could not
be maintained on the grounds on which it was placed, they would
ask that it should be sustained on the following grounds: first,
that the proof showed no such agreement as that set out in the
complaint; and, second, if made, it was not such as to avoid the
sale, and the referee erred in finding that it was sufficient.

The cause came on to be heard by Judge Hudson, who held
that "the announcement of Mr. Cleveland, attorney for the
defendants, at the sale, was made in the best of faith, and he was
in duty bound to make it, as otherwise his clients might have
been seriously prejudiced in the probate suit then pending about
the same land; and that the evidence did not justify the referee
in finding that there was a contract with Grambling not to bid
at the sale—in fact, the great weight is against such conclusion."
And so holding, he sustained the referee's report, both on the
grounds upon which it was based, as well as others, and dismissed
the complaint.

To this decree the plaintiffs filed numerous exceptions, which
are in the "Brief" and need not be restated here.  The questions
made are substantially these: I. Was the announcement made
at the sale by the attorney of defendants sufficient to avoid their
purchase, and the sheriff's deed to them ?  II. Was there any
agreement between defendants and any other person as to not
bidding at the sale ?  And if so, did it have the effect of making

the land sell for an under value? III. Was the decree based on any testimony which was improperly admitted?

Is this an action at law or a case in chancery? Considered simply as an action to recover the land, it is clearly the former— nothing more nor less than trespass to try titles. In this view, the Circuit Judge having found as matter of fact, that the defendants did not make a contract with Grambling not to bid at the sale, nor combine in such a manner as to prevent fair and full competition, this court would have no right to review the evidence, as in that case our jurisdiction would be confined solely to the correction of errors of law, assuming the facts to be as found. But looking to the matters charged as the grounds of recovery, we find the prayer is, that the sheriff's deed to the defendants may be set aside as void, the defendants, as alleged, having purchased the land for less than its value, caused by a fraudulent combination on their part to chill the biddings, both by having it announced at the sale that each of the sisters claimed a fourth interest in the land, and also by making an agreement with one Grambling not to bid at the sale. These are matters cognizable only on the equity side of the court, and would seem to characterize it as a case in chancery. So considering, this court, sitting as an appellate tribunal, has the right to review the whole evidence and to determine all the questions in the case, whether of fact or of law.

First, as to the announcement at the sale. As we understand it, the defendants had nothing to do with levying and selling the land under execution. They were prosecuting their appeal from the Probate Court to establish their claim that they paid part of the purchase money of the land, and were entitled to equitable rights therein, when it was advertised to be sold under execution as the property of their deceased brother Mark. What could they do but give notice of their claim or abandon it, as an innocent purchaser without notice of their alleged equities would have been entitled to hold it against them? As the sale under execution could carry nothing more than the interest of Mark, whatever that might be, we can have no doubt that the notice given, tending to limit that interest, did reduce the price at which the land was sold. But we cannot see that for that reason it was

illegal and sufficient to avoid the sale. Mr. Cleveland made no false statement. What he said as to the pending appeal from the Probate Court was in fact true, and everything else he said about buying a law suit, &c., was, of course, mere matter of opinion, as to which all persons were at liberty to form their own judgments.

Such notices at sheriff's sales are not at all uncommon. In this case, of course, the court could not hear and determine the appeal from the Probate Court. It is not known, and probably never will be, whether the opinion of Mr. Cleveland was well founded or not, and therefore we are not authorized to assume that the sisters had no interest in the land, and that the notice was pretensive merely to chill the biddings. On the contrary, without regard to whether that opinion was or was not sound, we concur with the Circuit Judge that "the announcement of Mr. Cleveland was made in the best of faith, and he was in duty bound to make it, as otherwise his clients may have been seriously prejudiced in the suit then pending between the plaintiffs and defendants about this same land," &c.

Second. As to the alleged combination to prevent free and full competition. It has been settled in this State, "that the principle which governs all sales at auction, and especially judicial sales, is, that there should be full and fair competition. Any agreement or combination, therefore, the object and effect of which is to chill the sale and stifle competition is illegal, and no party to the agreement or combination can derive benefit from the sale," &c. See *Hamilton* v. *Hamilton*, 2 *Rich. Eq.*, 355; *Barrett* v. *Bath Paper Company*, 13 *S. C.*, 156, and authorities cited. We do not understand that every agreement of parties to buy together will avoid a sale. Several persons may unite in making a purchase, one bidding for all, provided there is no intention thereby to prevent free competition. As was said in *Hamilton* v. *Hamilton*, *supra*, "It is shown in that, as in other cases, that persons may properly unite for the purpose of making a bid among themselves, where no one of the associates was able to purchase or desired to own the entire property exposed to sale, the effect of such an agreement is to advance the object which the policy of the law favors, a fair price to the parties interested in the article sold," &c.

It was not shown that the sisters agreed beforehand for one to bid for herself and the others. As it turned out, however, Mrs. Bishop did bid for all. But if there had been a previous understanding to that effect, we do not think it would have been sufficient to avoid the sale. There is no principle or rule of law, which requires every one at a sale to become a bidder or even all of those who may desire a part of the property sold. The sisters were claiming in the same right as tenants in common—each wanted a part, but neither wanted the whole of the land, and we cannot see that the fact that one of them bid for the land and had it set down to all of them was any violation of the salutary principle adopted for the purpose of securing full and fair competition at auction sales. See *Carson* v. *Law*, 2 *Rich. Eq.*, 307.

But it is urged that the defendants combined with Grambling, a stranger, and induced him not to bid at the sale, by agreeing to sell him 25 or 30 acres of the land at the price which it might bring at the sale, and that they reaped advantage from this agreement in the reduced price at which they purchased the land. This was a question of fact, as to which the referee, after full and careful consideration, found that there was some agreement with Grambling about selling him a part of the land, but that it was not shown that such agreement had any effect in reducing the price at which the land sold; while the Circuit Judge went further and found that "the evidence did not justify the referee in finding that there was a contract with Grambling not to bid at the sale; in fact, the great weight is against this conclusion. It is not even sufficiently strong to satisfy me that the defendants or any authorized agent ever agreed to let him have twenty-five or thirty acres of the land, in case they became the purchasers," &c.

The rule of this court, when the Circuit Judge concurs with the referee upon a question of fact, is well known. We have read the testimony carefully, and we cannot say that the finding of the Circuit Judge is without evidence to support it. The allegation was that the illegal agreement was made by Grambling with Elijah Pope, the husband of one of the three sisters, in going to the court house on the morning of the sale, and was afterwards ratified by the sisters (Harriet was not at the court house that day), in the office of Mr. Cleveland. No one but Grambling him-

self says that the sisters made any contract about his not bidding at the sale. Mr. Cleveland says there was some agreement in his office, but he did not know with whom it was made, and he does not think there was any understanding that Grambling was not to bid at the sale—thought the sale was fair. All the other parties positively deny that there was any such agreement or understanding. Besides, if the notice given by Mr. Cleveland at the sale touching the claim of the sisters, was taken as showing a serious cloud upon the title except as to one-fourth, as the referee found, the land was not sold at a sacrifice.

As the appeal from the probate judge, involving the merits of the sisters' claim, was not before the Circuit Judge for adjudication, the testimony of Eliza Bolling and Mrs. Bishop upon that subject was irrelevant to the issues in the case, and not having been considered, we do not think it necessary to go into the subject of its admissibility. In the view taken it did not in the least affect the decree rendered.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

The plaintiffs filed a petition for rehearing, claiming that they were entitled certainly to three-fourths interest, and asking "that an issue be allowed between plaintiffs and defendants as to what interests or what equities, if any, the defendants had in said land at the time of sale." Upon this petition,

January 19, 1887. The following order was passed

PER CURIAM. We have carefully considered this petition. The judgment of this court did not undertake to rule that the interest sold was only one-fourth, but that the sale carried the interest of Mark, whatever that might be. As it does not appear that any material fact or principle involved was overlooked in the decision, there is no ground for a rehearing, and the petition is refused.